UNITED STATES DISTRICT COURT         ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TREMAIN L. GRAHAM,

        *Plaintiff*,         MEMORANDUM
  -against-         AND ORDER
        07-CV-1690 (JG)
THE PEOPLE OF THE CITY OF NEW YORK
*et al.*,

        *Defendants*.
---------------------------------------------------------------X
A P P E A R A N C E S:

    TREMAIN L. GRAHAM
        P.O. Box 350026
        Jamaica, NY 11435
        Plaintiff, *Pro Se*

    MICHAEL A. CARDOZO
        Corporation Counsel for the
        City of New York
        100 Church St.
        New York, NY 10007
    By:    Douglas William Heim
        *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

Tremain Graham brings this *pro se* action under 42 U.S.C. § 1983 alleging violations of his civil rights stemming from his arrest in February 2007 and a search of an apartment in a building he owned in April 2007. The defendants have moved to dismiss Graham's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Graham alleges that on February 6, 2007, the police received a report from Jessica Roman, who lived on the second floor of 754 Bushwick Avenue in Brooklyn, that Graham was

"illegally in a neighboring apartment." Compl. at 2. Graham's mother, Trellis Horton, lived on the first floor of 754 Bushwick Avenue. Graham also "live[d] and reside[d]" in Apartment 1 at all times "mentioned" in the complaint. *Id.* at 1. Defendant Officer Juana Ortiz and an "unidentif[i]ed officer who was wearing a false name plate and badge" arrived at 754 Bushwick, searched and questioned Graham and Horton, and took Graham into custody on assault and menacing charges stemming from Roman's complaint. *Id* at 2. Graham's complaint suggests that he was then subjected to an order of protection preventing his return to the premises even though he was apparently the holder of a mortgage secured by the property. *Id.* at 3. ("Mr. Graham was unable to return to the property he took a loan for due to the neglig[e]nce of the police officer Juana Ortiz and her unreliable decisions.") Graham asserts that the authorities failed to present any evidence of assault or menacing in court, and that he was therefore falsely arrested and detained for a crime he did not commit.

Graham also alleges that, on the evening of April 9, 2007, "Detective Mike t Henry"[1] illegally entered Apartment 1 and conducted "several illegal searches" without presenting a warrant. Compl. at 4. He further alleges that Horton, who was present when the search occurred, unsuccessfully requested that an "NYPD supervisor" oversee the search and was told that she would be detained if she "refused a search." *Id.* Graham seeks $1 million in damages for these alleged violations of his rights.

On October 31, 2008, defendants filed the instant motion to dismiss. They assert that Graham was actually arrested twice during the period in question, once on February 5 and again on February 7. They contend that both arrests were supported by probable cause as a matter of law, and that Graham waived his right to challenge the February 7 arrest when he

---

[1] Although it is unclear whether Graham's handwritten complaint refers to "Mike t Henry" or "Mike + Henry" (*i.e.*, Mike and Henry), Graham clarified at oral argument that the defendant in question is a single

accepted an adjournment in contemplation of dismissal ("ACD").[2] They also claim that Graham lacks standing to challenge the legality of the April 9 search. Finally, they allege that the individual officers named by Graham have qualified immunity from Graham's suit and that Graham has failed to state a claim against the City of New York and the 83rd Precinct.

DISCUSSION

A. *Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). Accordingly, I must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Generally, "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "fair notice of what the . . . claim is and the grounds on which it rests." *Erickson*, 127 S. Ct. at 2200 (internal quotation marks omitted).

B. *Construction of Graham's Complaint*

---

individual, Detective Michael T. Henry. Tr. at 11.

[2] Because Graham conceded at oral argument that he has no grounds for directly challenging the February 7, 2007 arrest, I do not reach defendants' argument that Graham's acceptance of an ACD precludes him from asserting a false arrest or imprisonment claim. However, I note that the defendants' reliance on the First Department's decisions in *Molina v. City of New York*, 814 N.Y.S.2d 120, 121 (1st Dep't 2006) ("Plaintiff's acceptance of the [ACD] also operated as a waiver of his right to challenge whether there was probable cause for his arrest . . . .") and *Hock v. Kline*, 758 N.Y.S.2d 640, 641 (1st Dep't 2003) ("By accepting an [ACD] . . ., plaintiff waived his right to challenge . . . whether there was probable cause for his arrest."), may well be misplaced. Those cases are in obvious tension with the decision of the New York Court of Appeals in *Hollender v. Trump Village Co-op, Inc.*, 58 N.Y.2d 420, 423 (1983) ("We further hold that while [an acceptance of an ACD], therefore, *does not interdict an action for false imprisonment*, it does bar one for malicious prosecution.") (emphasis added).

As the Second Circuit has frequently advised, the filings of *pro se* litigants should be construed "liberally" and read "to raise the strongest arguments they suggest." *Ferran v. Town of Nassau*, 471 F.3d 363 (2d Cir. 2006). Graham contends that he was falsely arrested for assault on February 6, 2007. However, the documents submitted by defendants demonstrate, and Graham's response to their motion apparently concedes, *see* Pl.'s Response at 3 (referring to "the infamous February 5, 2007"), that Graham was actually arrested twice during the relevant time period: on February 5 in response to Roman's complaint, and on February 7 because he failed to obey the protective order barring him from the premises of 754 Bushwick Avenue. This chronology is also consistent with the fact that Graham names Sonya Yi as a defendant, as she was only involved in the February 7 arrest. Accordingly, I consider whether Graham has stated a claim as to either of these arrests or the April 9 search conducted by Detective Henry.

C.   *The Individual Defendants*

The defendants allege that qualified immunity protects Officers Ortiz and Yi and Detective Henry from Graham's claims. Because qualified immunity is "an *immunity from suit* rather than the mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), qualified immunity questions should be resolved at "the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal quotation marks omitted). A qualified immunity defense is established if (1) the defendant's action did not violate clearly established law, or (2) it was objectively reasonable for the defendant to believe that his action did not violate such law. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Where the evaluation of probable cause is at issue, a lesser standard of "arguable probable cause" is sufficient to insulate a law enforcement officer based on qualified immunity. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

1. *The False Arrests*

On a false arrest claim, an officer "is entitled to qualified immunity as a matter of law if *the undisputed facts and all permissible inferences favorable to the plaintiff* show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Coons v. Casabella*, 284 F.3d 437, 440 (2d Cir. 2002) (emphasis added). In determining the existence of probable cause, I "consider the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Defendants claim that Graham "admits that Jessica Roman called the police and told defendant Ortiz that he had assaulted her," and assert that "Roman signed, under penalty of perjury, a declaration in support of the Criminal Court Complaint alleging that [Graham], *inter alia*, had assaulted and menaced her earlier the same day on February 5, 2007." Def. Mem. 10. This information, according to the defendants, establishes arguable probable cause as a matter of law.

The problem with this argument is that it is not clear that the officers received those complaints before arresting Graham. As to Roman's "call" to the police, the complaint alleges only that "Officer Ortiz took a report from Roman that stated that she had been assaulted by Graham on the same day as the illegal entry report was made, which was February 6 2007." Compl. at 2. It is not clear from the complaint whether this "report" was made before or after Graham was placed in custody, or even whether it was made before or after the officers arrived on the scene on February 5. Similarly, although defendants have submitted a declaration by Roman signed February 5, 2007, and Graham apparently does not dispute its authenticity (although he does dispute its accuracy), the record does not reflect whether this declaration was

5

executed before or after Graham was placed in custody. Indeed, it is possible that the "report" referred to in the complaint is, in fact, Roman's signed declaration. Furthermore, Graham repeatedly alleged at oral argument that when the police arrived at 754 Bushwick Avenue on February 5, Roman initially told them that Graham had not harmed her. Tr. at 19, 20, 21. He further asserted that Roman did not make her allegations of assault until "after [Graham] was in custody already." Tr. at 20. He also alleges that the police initially came to the scene in response to reports of burglary or trespassing, rather than assault. See Compl. at 2 ("[Roman] called the police to make a report that Graham was illegally in a neighboring apartment.").

Given the foregoing, questions of fact clearly remain as to what information the police had received when they arrested Graham. It would be permissible to infer from the complaint, particularly as explicated at oral argument, that the police had not received any allegations of assault before they arrested Graham on assault-related charges. Accordingly, I am unable to conclude that arguable probable cause for this arrest existed as a matter of law. *A fortiori*, defendants have failed to establish actual probable cause for the February 5 arrest as a matter of law.

The circumstances surrounding the February 7 arrest are less controversial. Graham admits that he had been ordered to stay away from 754 Bushwick Avenue following his February 5 arrest, *see* Compl. at 3 ("being that this protection order was given . . ."), his complaint does not make any explicit allegations regarding the February 7 arrest, and he conceded at oral argument that he had no grounds to oppose this arrest. Tr. at 5 ("THE COURT: Okay. Are you complaining about the false arrest when you went back and they arrested you on the order of protection? DEFENDANT [*sic*] GRAHAM: Under the law was [*sic*], I really can't."). Accordingly, to the extent Graham's complaint alleges that he was falsely arrested on

February 7, that claim is dismissed.

   2.   *The Illegal Search*

   Graham's complaint also alleges that

   On April 9, 2007, [between 8:20 and 11:24 P.M.] Detective Mike T. Henry illegally entered the then occupied apartment of Ms. Horton which no search warrant was shown [*sic*] and conducted several illegal searches. Ms. Horton asked for a[n] NYPD Supervisor to come on the scene before the search was done, Ms. Horton was den[ied] and threatened to be detained if she refused a search.

Compl. at 4.

Construed liberally,[3] the complaint alleges that, on April 9, 2007, the apartment was searched without a warrant. It also alleges that the search was made without the occupant's voluntary consent. The defendants do not argue that the search was executed pursuant to a warrant and they concede that any factual dispute regarding consent should not be resolved on a motion to dismiss. Tr. at 12. However, defendants argue that Graham's illegal search claim must be dismissed for lack of standing because he fails to allege that he personally suffered any "injury in fact" from the search and cannot rely on the doctrine of third-party standing to bring suit for any injury sustained by Ms. Horton.

Defendants' standing arguments misconstrue Graham's complaint. While I agree that the doctrine of third-party standing is inapplicable here, I believe that the complaint, construed liberally, satisfactorily alleges that he was personally harmed by the allegedly illegal search. Although the complaint refers to "the then occupied apartment of Ms. Horton," Compl.

---

   [3] Read literally, the complaint alleges only that no warrant was shown and that Ms. Horton's request to see a supervisor was denied. Standing alone, these allegations would not survive the assertion of qualified immunity, as it is not clearly established Fourth Amendment law that an executing officer must serve a copy of a search warrant before executing it, s*ee Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004) ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."), and I have found no case indicating that an officer who is executing a valid search warrant has a duty to wait for a supervisor before doing so.

7

at 4, it also states that "[a]t all times herein mentioned Plaintiff lives and resides at 754 Bushwick Avenue Apartment 1," and that "Plaintiff is the legal owner and caretaker of the premises at 754 Bushwick Avenue." Compl. at 1. As defendants suggested at oral argument, Tr. at 9, Apartment 1 is also the apartment where Ms. Horton resided. Thus construed, Graham alleges not that his mother was illegally searched, but that his home -- *i.e.*, the apartment he owns and occupies with his mother[4] -- was illegally searched. Indeed, Graham suggests that the February 5 arrest and resulting order of protection effectively evicted him from his domicile. Compl. at 4 (". . . since allegations Graham has not been able to live at the property he purchased. Also this made Mr. Graham pay mortgage where he did not live (at the time)."). He also seeks "1 million dollars" in damages. Compl. at 5. Given these allegations, I cannot agree with defendants' contention that Graham "never allege[s] in his complaint that he was harmed during any purported searches" of the apartment and "does not allege any injury to himself." Def. Mem. at 17.[5] I therefore construe Graham's complaint as seeking compensation for the damage the illegal search caused him, rather than Ms. Horton, and deny the motion to dismiss this claim for lack of standing.

D. *Municipal Defendants*

Graham also names the City of New York and the 83rd Precinct as defendants. The 83rd Precinct is a division of the New York City Police Department, which is a "non-suable" entity. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). The City of

---

[4] Graham also contended at oral argument, "I got proof I was not even living there. I was homeless and working at a cab station in Long Island." Tr. at 26. Although Graham did not specify the time period during which he was allegedly homeless, these assertions obviously cast some doubt on the truth of the allegation that he "live[d] and reside[d]" in Apartment 1 at all times mentioned in the complaint. Compl. at 1. However, the veracity of the allegations in the complaint are not at issue in a motion to dismiss, and the "party invoking federal jurisdiction" only bears the burden of establishing the elements of standing by "the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[5] Defendants also fault Graham for failing to allege that he was present "at any point during the purported searches." Because defendants offer no authority for the proposition that a plaintiff must have been present during an illegal search of his home in order to sue for the damage caused by that search, this argument is unpersuasive.

8

New York, a municipality, "cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993)   In this case, Graham's single allegation as to the City of New York is that the city was "responsible for hir[ing]" the named individual officers.  Compl. at 1.  Graham's claim that the city is liable for the tort of its employee thus relies on a theory of *respondeat superior.*  However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.  Leatherman*, 507 U.S. at 166.  Accordingly, Graham has failed to state a claim against the city under *Leatherman* and cannot sue the 83rd Precinct.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted as to the City of New York, the 83rd Precinct, and Officer Sonya Yi, and as to any claims stemming from Graham's February 7, 2007 arrest, and denied in all other respects.

So ordered.


John Gleeson, U.S.D.J.

Dated:  June 2, 2009
          Brooklyn, New York

9